IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DEBORAH LAUFER, Individually<br><br>Plaintiff,<br><br>v.<br><br>T & C INN LLC d/b/a TOWN & COUNTRY INN AND SUITES QUINCY, an Illinois Limited Liability Company<br><br>Defendant. | Case No. 3:20-cv-03237 |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

COMES NOW T & C INN LLC d/b/a TOWN & COUNTRY INN AND SUITES QUINCY, by and through its counsel, Rammelkamp Bradney, P.C., and pursuant to Federal Rule of Civil Procedure 12(b)(1), hereby submits this Memorandum of Law in support of its Motion Dismiss the Plaintiff's Complaint, which was also filed on this same date.

### INTRODUCTION

Plaintiff's Complaint, filed on September 14, 2020, seeks injunctive relief, attorney fees, and litigation expenses pursuant to Title III of the Americans with Disabilities Act (ADA). The Complaint seeks this relief against the Defendant, which is the owner and operator of a hotel located in the City of Quincy, Adams County, Illinois.

Plaintiff, Deborah Laufer, is a resident of Pasco County, Florida, which is over 1,100 miles from Quincy, Illinois. Plaintiff can be described as a "serial litigant," having filed at least sixteen (16) nearly identical complaints in the State of Illinois alone since

1

June 16, 2020 and having filed literally hundreds of like complaints in other federal jurisdictions.

In her Complaint, Plaintiff describes herself as a "tester" and she alleges that she has visited Defendant's website, including mainly third-party websites (*i.e.,* Expedia.com, Hotels.com, Orbitz.com, among others), to determine whether these websites are compliant – in her subjective opinion - with 28 C.F.R. §36.302(e). Plaintiff alleges that when she visited these websites, she found them not in compliance §36.302(e). Plaintiff claims that at some unspecified future date, she will again visit the websites to assess compliance.

Plaintiff does not allege that she has any plans to actually travel to Defendant's hotel, to Quincy, or even to Illinois.

## STANDARD OF REVIEW

Defendant brings this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *Stubenfield v. Chicago Housing Authority,* 6 F.Supp.3d 779, 782 (N.D. Ill. 2013), citing *Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856 (7th Cir. 1996). In deciding a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), a case is properly dismissed when, even considering all material allegations in the complaint as true, there are insufficient facts upon which to confer subject matter jurisdiction upon the court. *See Santangelo v. Comcast Corporation,* 2015 WL 3421156 (N.D. Ill. 2015).

## ARGUMENT

### Dismissal is Warranted Because Plaintiff Lacks Standing

Standing is an integral and essential part of what is required in order to confer subject matter jurisdiction upon the federal courts.

> "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies [and the] concept of standing as part of this limitation." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976).

Regarding the question of standing, the *Simon* Court emphasized that the focus is not on the issue the plaintiff seeks to have redressed, but on the party seeking to have a complaint heard by the federal court and whether that party has such a personal stake in the outcome of the controversy as to warrant invocation of the federal court's jurisdiction.

The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The burden of establishing standing to pursue a claim in federal court rests squarely on the shoulders of the party invoking federal jurisdiction; which in the present case is the Plaintiff. *Id.*

Plaintiff alleges that she is a "tester" for purposes of determining compliance with the ADA. While "tester" status does not necessarily preclude Plaintiff's ability to establish standing, it alone is insufficient when any of the other three elements required for standing are not met. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019).

The Plaintiff's burden with regard to standing has, over the years been held to include "the irreducible constitutional minimum" of three elements, which are often described as follows:

> "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical,' . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . [the] result [of] the independent action of some third party not before the court. . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Where a "case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Spokeo, 136 S. Ct. at 1547. Furthermore, of these three elements, the cornerstone of constitutional standing is the requirement that the plaintiff have suffered an injury that is "concrete and particularized." Spokeo, 136 S. Ct. at 1548.

### Absence of Concrete Harm or Particularized Injury

The terms "concrete" and "particularized" are separate and distinct and both must be satisfied before a plaintiff can even begin to establish standing. The Supreme Court in Spokeo addresses the difference between these terms.

For an injury to be considered "concrete" for example, it "must be 'de facto'; that is, it must actually exist." Id. The use of the term "concrete" is intended "to convey the usual meaning of the term – 'real,' and not 'abstract.'" Id.

Particularization requires something different. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id.

Accordingly, for an injury to be concrete and particularized, it must be real, and it must impact Plaintiff in a personal and individual way. The existence of a concrete and particularized injury is only part of what is required of the Plaintiff in order to establish standing. Plaintiff's inability to establish a concrete and particularized injury is the essence of Defendant's motion to dismiss.

In the present case, viewing the allegations of the Complaint in a light most favorable to the Plaintiff, it is abundantly clear that the Plaintiff has not alleged any specific injury, much less a "concrete and particularized" injury. Essential to this Court's consideration of the motion to dismiss is the fact that the plaintiff does not allege that she has ever actually considered traveling to Quincy, Illinois or that she has ever actually considered staying at the Defendant's hotel. Plaintiff's Complaint is based solely on the allegation is that she has, on some previous and unspecified date(s) "visited" websites upon which Defendant's hotel is listed and that her sole motivation in doing so was to assess the websites' compliance with 28 C.F.R. §36.320(e).

Plaintiff has not alleged that she has any actual or personal connection to the Defendant's hotel that would establish a concrete or particularized harm that is individual and personal to her. As an allegedly disabled adult, viewing websites of facilities at which she has no intention of ever actually visiting, Plaintiff is no different than every other disabled adult viewing a website with no intent of visiting the facility described therein. "There must be some connection between the plaintiff and the defendant that 'differentiates' the plaintiff so that his injury is not 'common to all members of the public." *Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 834, citing Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649 (4th Cir. 2019).*

Plaintiff alleges that she has suffered "frustration and humiliation" as a result of the alleged deficiencies in the websites. However, "indignation at violation of the law is not concrete because it does not impact the plaintiff personally; it is not particularized because it does not affect him in an 'individual way." *Carello, 930 F.3d at 834, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560*.

The allegations in Plaintiff's Complaint are of deficient information on a website. There is no allegation that Plaintiff visited the subject websites because she had a specific and actual need or intent to visit the property described on the website. As such, these allegations suggest – at most – a mere procedural violation of 28 C.F.R. §36.302(e) and such allegations are insufficient to establish standing.

In *Spokeo*, for example, the Supreme Court specifically held that "a bare procedural violation, divorced from any concrete harm" will **not** satisfy the injury in fact requirement of standing. *Spokeo, 136 S. Ct. at 1549*. In fact, a violation of a procedural requirement may cause **no harm at all**. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. For this reason, "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Id*.

### No Real and Immediate Threat of Future Injury

To establish injury in fact for purposes of Article III standing, "when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott International, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013), citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)*. Plaintiff in the

6

present case does not meet this burden as she has failed to allege facts demonstrating a real and immediate threat of future injury.

In determining whether a plaintiff has met this "real and immediate threat" requirement, the Supreme Court has held that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Scherr, 703 F.3d at 1074, citing Lujan, 504 U.S. at 564.* Accordingly, in order to establish standing necessary to proceed with a complaint for prospective injunctive relief under the ADA, the Seventh Circuit in *Scherr* requires the following:

> "[A] plaintiff must allege 'past injury under the ADA'; show that 'it is reasonable to infer from her complaint that this discriminatory treatment will continue'; and show that 'it is also reasonable to infer, based on the past frequency of her visits and the proximity of [the public accommodation] to her home, that she intends to return to [the public accommodation] in the future.'" *Scherr, 703 F.3d at 1074, citing Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2nd Cir. 2008).*

Other courts have referred to this as the "proximity test," which requires consideration of four factors, including: "(1) the proximity of the place of public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of plaintiff's plans to return; and (4) the plaintiff's frequency of travel near defendant." *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014).*

In the *Scherr* case, the plaintiff was able to establish standing because she had previously stayed at the defendant hotel, she would continue to stay at the defendant hotel but for the alleged ADA violations, she regularly traveled in the vicinity of the defendant hotel because she had extended family in the area, and she did, in fact, have

7

definite plans to return to the area for a family wedding. *See generally Scherr, 703 F.3d at 1074-75.*

Contrast these facts of *Scherr* with the allegations in the present Complaint. Here, the Plaintiff's allegations fail to establish not only the requisite proximity to Defendant's hotel but fail to establish the real and immediate threat of future injury. Plaintiff, a resident of Florida, lives over 1,100 miles away from Quincy, Illinois. There are no facts alleged in the Complaint which would suggest that the Plaintiff has ever been to Defendant's hotel, that she has ever been to Quincy, or that she has ever even been to Illinois. Likewise, Plaintiff does not allege any reason why she would need to travel to Quincy or Illinois. Quite simply, there are no facts alleged which would satisfy the real and immediate threat of injury test which is required for standing purposes.

Plaintiff's Complaint should be dismissed for lack of standing.

## Dismissal is Consistent with Other Jurisdictions

Support for dismissal of Plaintiff's Complaint is found in decisions from other jurisdictions as well. A brief sample of similar cases from other federal jurisdictions if provided for this Court's consideration.

For example, in *Hernandez v. Caesars License Company, LLC*, Civil No. 1906090, 2019 WL 4894501 (D.N.J. October 4, 2019), the plaintiff, also a Florida resident and allegedly an advocate for ADA compliance, sued an Atlantic City hotel and casino claiming that its website violated 28 C.F.R. §36.302(e), the same regulation at issue here. The court in *Hernandez* found that **if a person was actually looking for a place to stay in Atlantic City,** the defendant hotel's alleged non-disclosure of

accessibility information *could* conceivably harm such a person with disabilities. However, the plaintiff in *Hernandez*, like the Plaintiff here, had no intention or interest in staying at the subject hotel, but rather the sole interest was in visiting a website to assess compliance with the ADA, and this was insufficient for purposes of demonstrating an injury and conferring standing. *See Id.*

Another example is found in *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F. Supp.2d 998, 1005 (W.D.N.C. 2011), in which the court held that a plaintiff claiming standing by virtue of "tester" status lacked threat of imminent future harm and was not entitled to injunctive relief, stating as follows:

> "Nor is Plaintiff afforded standing simply by way of his status as an ADA 'tester.' An ADA tester does not have standing to sue under Title III in the same way a tester has standing under Title II of the Civil Rights Act of 1964, as Plaintiff suggests. Instead, the law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirement where she would not have standing otherwise."

Finally, in New York, a nearly identical complaint was dismissed on August 7, 2020 for lack of standing. In *Harty v. West Point Realty, Inc.*, Civil No. 19 CV 8800, 2020 WL 4570595 (S.D.N.Y. August 7, 2020), the plaintiff, a disabled resident of Florida and a self-proclaimed "tester," alleged that he visited the defendant's online reservation system solely to determine compliance with the ADA. Finding the reservation system deficient, plaintiff alleged violation of the ADA and 28 C.F.R. §36.302(e).

In dismissing the Complaint for lack of standing, the New York District Court found that in order to "maintain an ADA cause of action seeking injunctive relief to prevent future injury, a plaintiff must allege facts giving rise to an inference that he will suffer future discrimination by the defendant . . . [and] [s]uch threat of future injury must be 'real and immediate,' as opposed to 'merely conjectural or hypothetical.'" *Harty*, 2020

9

WL 4570595 *3, citing *Shaywitz v. Am. Bd. Of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 382 (S.D. N.Y. 2009).

The guidance that is provided by these other jurisdictions is instructive when considering the allegations at issue before this Court on the Plaintiff's Complaint. Just as the plaintiffs in these other jurisdictions failed to establish standing, so too has the Plaintiff in this case. The Plaintiff's allegations, even taken as true, suggest only that plaintiff visited websites to assess compliance, was "frustrated and humiliated" to find that the websites did not contain the accessibility information she thought should be there, and that she will return to the websites at some time in the future to again assess compliance. Strikingly absent from the allegations is any suggestion that Plaintiff plans or needs to travel to Quincy, Illinois or that she plans or needs to find public accommodations in Quincy, Illinois.

## CONCLUSION

As noted hereinabove, allegations of a mere procedural violation, divorced from any concrete or particularized harm, cannot satisfy the injury in fact requirement of Article III. This is all Plaintiff has alleged. As such, Plaintiff has failed to establish that she has standing to pursue this matter and therefore, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Complaint should be dismissed.

WHEREFORE, for the reasons set forth in Defendant's Motion to Dismiss and herein, Defendant, T & C INN, LLC d/b/a TOWN & COUNTRY INN AND SUITES QUINCY, respectfully requests that the Plaintiff's Complaint be dismissed.

Respectfully Submitted,

RAMMELKAMP BRADNEY, P.C.,

*/s/ Amy L. Jackson*
Amy L. Jackson (IL #6226466)

**Attorneys for Defendant T & C LLC:**
RAMMELKAMP BRADNEY, P.C.
Amy L. Jackson (IL Bar #626466)
232 West State Street
Jacksonville, IL 62650
217-245-6177
217-243-7322 (fax)
ajackson@rblawyers.net

**Attorneys for Plaintiff:**
Kimberly A. Corkill
Thomas B. Bacon, P.A.
7 N. Coyle Street
Pensacola, FL 32502
850-375-3475
877-828-4446 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Motion to Dismiss was electronically filed and was served via the Court's Electronic Filing System upon all attorneys of record. The undersigned is unaware of any other parties or counsel who may require separate notice.

Dated: October 28, 2020

Signature: */s/ Amy L. Jackson*